The next matter, number 24-1040, Cynthia A. Roberge v. Travelers Property Casualty Company of America. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. Jim D'Ambro on behalf of the appellant, Cynthia Roberge. May I request 13 minutes or two minutes rebuttal? Yes. As the court is aware, we're before the court on appeal regarding the denial of the appellant's cross motion for summary judgment and the granting of appellee travelers motion for summary judgment. By way of background, this case was filed in state court, removed by travelers to federal court. The district court heard the matter on diversity and, as this court is well aware, must apply as best it can in forecast Rhode Island law while sitting in diversity. The basis of our appeal is essentially two grounds. In our opinion, quite clear Rhode Island law. Ms. Roberge was an employee of the state of Rhode Island while operating her own personal automobile and was involved in a very serious accident. There's two main points that are not in dispute. One, she was an employee of the state of Rhode Island in that she was in the scope of her employment at the time of the accident. That is conceded by travelers. Travelers indicated that in their denial letter of coverage and they did not oppose the appellant's statement of undisputed facts on that point. So it's uncontested. Secondly, uncontested is the fact that travelers' policy contained a special endorsement. And that endorsement was an employee as an insured endorsement. And what that endorsement did was make her automobile considered a covered auto at the time of this accident by the endorsement. So there's no doubt that if she was involved in this particular accident, say for example she rear-ended someone, she would be entitled to liability coverage on a primary basis from travelers' policy pursuant to that endorsement. With that backdrop, we brought the case and we made two main arguments. One is under the Rhode Island Supreme Court case of Martinelli v. Travelers, that she should be considered a named insured as an employee operating a motor vehicle in the scope of her employment. You don't disagree that the Martinelli language is a little, shall we say, squiggly? Martinelli by itself, yes. But on a Smith judge, there were three cases thereafter. In fact, Medeiros I, Medeiros II, and Medeiros III. With Medeiros I and II, the Supreme Court addressed the issue. In fact, I was the defense attorney for the insurers in Medeiros I and II. I am very familiar with this issue. In Medeiros I and II, the issue was the application of the Martinelli exception. The court knows from the briefs, these were two gentlemen coming back from a Red Sox game. They were shareholders that owned two different corporations, West Valley Inn and Perinos. Just like in this case, the travelers' policy intended... Well, Judge Indeglia, Justice Indeglia was pretty definitive that there was a Martinelli exception. He is. That's the third case, Judge. So we have two Superior Court judges. Judge Hearst was Medeiros I and II. Judge Indeglia was Medeiros III. So Judge Hearst, I handled I and II before Judge Hearst. She applied the Martinelli exception. In that case, there was no evidence of scope of employment. So the motion was granted for the insurer. I just want to understand, maybe I'm getting confused. Sure. The named insured here is not your client. I agree. Okay. So then the Martinelli exception means even though they're naming somebody else, you can understand that to include the employee. That's correct. Okay. But what do we do when the policy, even for the named insured, only provides the coverage as to certain vehicles? I agree. A reading of that policy says that. I don't disagree with that. So even if it got two employees covered, it wouldn't help if the employee is not in the covered car. I disagree. What does Martinelli say that talks about that question? So if you look, and I included in the appendix the briefs that were filed with Martinelli. It's just like this case, Judge. In fact, this case is even better than Martinelli because at least in this case, she qualifies for liability purposes. I understand that argument. Put aside the liability provision. What did Martinelli suggest? That a policy that covers the named insured only as to certain automobiles, even if it could be read to cover employees when they're in those automobiles. What does Martinelli say that suggests it then also covers employees in different automobiles than the policy references? Martinelli, just unlike this case, attempted to limit U.N. coverage only to covered autos. So why would the Supreme Court indicate the availability of that exception if... Because an employee could be in a covered auto too, right? But not in that case. But they didn't hold that it did cover that case. I mean, it just... There's two different issues. There's the question of can something that doesn't name employees apply to employees? Martinelli says, yes, it may well, just like it may apply to shareholders. Why would it then also say, and it applies to cars, the policy doesn't reference? If I could give you the backdrop very quickly, Judge. So the basis of Martinelli, as well as a lot of cases in other jurisdictions, when a corporation is named as the named insured, it's not an individual. The corporation could never get the benefit of bodily injury. So a named insured, Class I insured, you don't necessarily have to be in a covered auto to get that coverage. Right, but the statute that's the grounding for Martinelli, which is the requirement to provide uninsured coverage, doesn't require you to provide it as to all cars. It requires you to apply it when you're providing insurance for the car covered, I would have thought, right? That's not what the statute necessarily says. The statute says no policy insuring against loss and defines a policy insuring against loss as a primary policy. The Rhode Island Supreme Court says that. When I buy car insurance, I usually buy it with respect to certain cars, not any car I happen to be in. I don't disagree with that. So are you saying that any car I'm in, now the uninsured motor coverage applies? Only if there's a nexus between the scope of employment at the time of the accident. Where is that in Martinelli? That's what I'm not seeing. I don't see that in Martinelli. I don't see it in Medeiros. And did the issue even arise in the Superior Court case? That was the whole issue in the case. The scope of employment was the whole issue. That's why Martinelli. Was it a non-covered vehicle? Yes, it's in the appendix, Judge. It was the same exact policy. It only applied coverage to specifically identified covered autos in both Martinelli and both Medeiros. And everybody agreed that she was in a non-covered auto? Yes. In Medeiros, they were in a personal auto coming back from a Red Sox game. And Judge Indeglier, in that case, based on an affidavit of the wife of one of them, said, well, they may have talked business. I guess still, ultimately, we have to do what the Supreme Court of Rhode Island would do, not what a Superior Court in Rhode Island has done. So what is there in Martinelli or Medeiros that suggests that reading of Martinelli is correct? I think if you just look at the language, Judge, both Medeiros and Martinelli, the trigger, the crux is the scope of the employment. That's what triggers the class one. That's why they should be considered a named insured when a corporation is only the named insured. It's not the covered auto. If you look at cases in many jurisdictions, there's UM coverage when they're not in a specifically identified vehicle because of the fact that they're in the scope of their employment. That's the whole purpose of that class one coverage that provides greater than class two coverage. That's the whole backdrop. If I can move to the second argument, which is irrespective of Martinelli, just a clear reading of the uninsured motor statute requires coverage in this case. Initially, in opposing the government... Is that because of the liability provision? Yes. But for that liability provision, but for the employee as an insured endorsement, I could not make this argument. What do we make of the significance of that insurance being only for liability? Excuse me? What do we make of the significance of that policy being only for liability? By the policy itself, so the UM statute in Rhode Island requires if you provide liability coverage, you must provide UM coverage. Now, in moving for summary judgment, travelers for the first time argued that its policy was not a primary policy. Under scaling... I guess what I'm asking is she's not trying to get liability coverage, right? No. It's used to show... If there's a policy that provides liability coverage for some cars and the kind of coverage she's seeking for other cars, is there precedent that suggests we then read the uninsured coverage statute to say, well, we just look past that distinction in the policy? In Rhode Island? Yeah. None other than the statute admittedly. There's a ton of cases, and I cited them in my brief, that says in very similar facts, same type of situation, uncovered auto for UM purposes, multiple cases. You've got to have an asymmetry between liability and UM coverage, multiple cases, 8th Circuit, 10th Circuit. Now, admittedly, they're interpreting different states' statutes, but it gives an idea how the courts deal with these issues. Travelers cited one that went the other way. I think clearly the majority favors having... So are you saying that there was no uninsured motorist or it was underinsured in this case? It's an underinsured motorist case. It's clearly an underinsured motorist case. For several reasons, scaling initially... And the first predicate for that is this has to be primary insurance. Right. In Rhode Island, under Rhode Island law, primary insurance is any insurance that by itself would provide coverage for an accident. Travelers wants to argue, well, primary means her own vehicle, her own insurance. That's not what the statute says. It says a primary policy. The word a is an indefinite article talking about something greater. The word does is a definite article which is narrower, so it's going for a broader interpretation. Secondly, the statute itself cites back to 3147.213. Are you suggesting there can be two primary policies? Oh, certainly. In insurance coverage, it's all the time because then you would get into a battle of other insurance issues, which coverage is primary. For example, for personal auto policy, it's not really the issue in this case, but says if there's other available insurance, we're pro rata. So certainly that's not the intent. You're not going to get into a case-by-case other insurance battle with applying the U.M. statute. The Rhode Island Supreme Court, obviously, by saying no policy insuring against with the Brown v. Travelers... The liability provision is not tied to the particular auto. Is that right? Well, the liabilities, they provide the broadest of all coverage on all autos. Exactly. So that includes her vehicles, a covered auto. Their argument is, though, because it's limited to liability only, the statute doesn't kick in. Is that the basic idea? Their argument, as I understand it, as well as Judge McConnell, it wasn't a primary policy. And you just can't interpret that in insurance law. I was mentioning about Rhode Island 31-47-3. It actually defines an owner's policy. So if the intent of the uninsured motorist statute was to limit it to an owner's policy, the legislature would have used that. They could have very easily said no owner's policy. It would have ended that, right? They didn't. Thank you. Thank you, Judge. Can I just ask one last question? And let me just go back very briefly to the first argument. I'm still having some trouble looking at the policy when the company marks symbol 2 as owned autos only. How do you get around that? That's the whole purpose of Martinelli, right? So the whole purpose of Martinelli, as well as many, many other cases throughout the country where a corporation is the class 1 insured, some courts will say that language is ambiguous. The Rhode Island Supreme Court chose not to go that route, but instead came up with a policy exception, if you could show that the employee was in the scope of their employment. So it's an argument by law, irrespective of the policy language. I don't disagree. You read that U.N. coverage. So even after Martinelli, policies are still including symbol 2? Still using those individual language, family members. And that's why the Rhode Island Supreme Court said in the right case it's appropriate. I would submit this is the best case that's been before the court. It's much better than Martinelli, Medeiros 1, 2, and 3. One, she's in a covered order for liability, and there's no doubt she was in the scope of her employment. If any case is going to apply, it would be this one. Is this something we should certify? I think so, Judge, because this issue is more important than just this case. It's a novel question in terms of the argument in terms of the statute, whether it applies to a commercial auto policy that restricts U.N. coverage only to owned autos. I think it's clear under Martinelli. Between Judge Indeglia's decision in the Supreme Court and Medeiros, it's quite clear that there's an exception in the nexus's scope of employment. But I would agree that in terms of the argument that I'm making on the U.N. statute, that that's a novel question. And it's going to have greater import than just this court. In fact, we have another case pending in Superior Court, Mr. Graceffa, on the Martinelli issue. But that's in Superior Court. And my understanding of the theory that you're understanding, if it's not ambiguous, is the idea you cannot contract around that provision? Yes, it's a public policy. I see. That's what it is. Most jurisdictions would go the other way, finding the policy ambiguous. For whatever reason, in Martinelli, the Supreme Court, instead of finding it ambiguous, they made the policy exception. Again, the nexus's scope of employment. Thank you. Thank you, Counsel. At this time, Counsel for the Appellee will introduce themselves on the record to begin. Good morning, Your Honors. May it please the Court. Jessica Savino for the Defendant Appellee in this matter. Travelers. You may begin. Thank you. Your Honors, as my brother, Counsel, admits, the plaintiff was not driving a covered auto in this accident.  as being a covered auto for purposes of U.M. coverage. And that would be because of symbol 2, correct? Exactly, Your Honor. Under the terms of the policy for U.M. coverage, coverage is limited to autos that, quote, you own. You is specifically defined in the policy as being the named insured, which is the State of Rhode Island and various State of Rhode Island entities, not anyone else. The Supreme Court of Rhode Island has held it unambiguous in a number of cases that when you is defined as the named insured, it means the corporation. It doesn't mean the corporation's shareholders, employees, officers, et cetera. It means the corporation itself, i.e., the State of Rhode Island. So it has to be a vehicle that the title is the State of Rhode Island. It can't be a State official who has a per diem and rents a car and uses it for that. It has to be specifically owned. Correct, Your Honor. It has to be a vehicle that's owned by the State of Rhode Island. In Martinelli, it was not owned. Correct. It was a personally owned vehicle just like this. Correct, Your Honor. Okay. And Martinelli has that language that what was the named insured there? If it didn't say you, what did that policy say? To make sure I understand your question, Your Honor, the named insured in Martinelli was the corporation itself. So here the language is you? Correct. And that's the difference? No, maybe I misunderstood your question, Your Honor. So in Martinelli, the policy language was to be an insured, you had to be, just as in here, in a covered auto or you had to be you. Just as in here, there was no dispute in that case. So when Martinelli has that language, that maybe it also applies to employees, what do you understand Martinelli to have been talking about? Certainly, Your Honor. So Martinelli didn't only just say that there might be possibilities in different circumstances where coverage might apply. They also said that it might be eligible for coverage under some policy that listed a corporation. It didn't say what that policy language would need to include. It didn't, in making that holding, state that if the shareholder in that case had been in the scope of his employment, that he would have automatically been a named insured. That wasn't their holding. Their holding was that there could be some circumstances and also some undefined policy language, and when you put those things together, it could lead to a conclusion where there might be coverage. But why would they say that? I mean, that seems completely superfluous if this particular language didn't have some meaning to them. And then in the Maduro's cases, at least one justice recognized it as an exception. Certainly, Your Honor. So respectfully, I disagree that they were saying that the language itself meant that there was an exception. The suggestion there was that different policy language and different circumstances put together could create a situation. Perhaps it's because the defined view is not so clearly defined. Maybe you could be defined in a policy in a more ambiguous way so it wasn't so clearly just the corporation itself. Well, in Maduro's, they repeated it, right? No. And that's where I must respectfully disagree with my brother. In Maduro's one, the court did not reaffirm the existence of this exception. They never even used the phrase Martinelli exception. They merely noted that the court in Martinelli had suggested that there might be circumstances in which an employee in the scope of his employment could be considered and insured. But that's mentioning Martinelli and repeating, isn't it? It's mentioning that the possibility had been raised. It's not saying that such a possibility exists. And then Maduro's applied it on remand in a circumstance just like this. Is that right? Or you disagree with that, too? I disagree. Okay. In Maduro's one, the court noted that the court had suggested there might be such a circumstance. In Maduro's two, that court merely noted that in Maduro's one, they had noted that there might be such a thing but not gotten to the question. And then in Maduro's three, there's the only case in the entirety of Westlaw that uses the phrase Martinelli exception, a trial court case. And the court there even simply suggests that this might be a thing. And because it might be a thing, then it created a question of fact. There's not a definitive ruling that this is always a thing. Correct. But the thing it understood that to apply to is this type of case. In other words, even though the person was in a personally owned vehicle and even though the policy only applied to covered autos that didn't include such vehicles, it acted as if the Martinelli exception to the extent it exists would cover such a circumstance. And then the fact question was, were they in the scope of employment? That much you agree with, right? I agree that the court there was treating the scope of employment as a factual question because of the possibility. Whereas on your view, nothing in Martinelli supported that treatment by the superior court. Exactly. I think the court in Martinelli was making almost an offhand remark that there could be different situations where this happened. But if there was no possibility, which is what you're arguing, then why would they say that that particular factual dispute had any relevance to anything, whether they were in the scope of their employment or not? Because if it was irrelevant, that wouldn't matter. So I'm not saying that there's no possibility ever that such a situation could occur, and I think that's the... Yeah, but what is it about the policy there that you're saying is different from the policy here that made it relevant there? I think the language in Martinelli was the same language, and that's why it wasn't that case. But their acknowledgment that there could be different language that could lead to a different result is why they... So they just include that to narrow the scope of their holdings. They were not addressing other cases. Exactly. Not saying this language would apply in a different case. Exactly. Both Martinelli and all the Medeiros cases were interpreting the actual terms of the policies in front of them. All the policies in front of them, whether it was you, it was the named corporation. But if the scope of employment was relevant to the policy that was before them, then it meant that the policy led to the possibility that there was coverage if there was scope of employment. I don't think that they were saying that that was the case in Martinelli. That was the argument put forth by the plaintiff. In Medeiros. In Medeiros. In Medeiros. In Medeiros, the scope of employment issue was relevant to the court's decision, but scope of employment wouldn't have mattered if the policy wasn't open to an interpretation that there was coverage. In Medeiros 3, the court did suggest that it could be relevant, whether or not he was... But that's the only... That was the final point. One of the Medeiros cases that said that. The two Rhode Island Supreme Court Medeiroses don't say that. They interpreted the plain language of the policy. They looked at the literal language. They found the literal language to be unambiguous, that you was not the claimant in that case, and that's what they based their decision on. Those two cases that looked at just the literal language were the only two Supreme Court cases. Medeiros 3, the only case to ever use this Martinelli exception phrase and suggest that it might be a relevant consideration was a trial court case. If we took your attention to the liability provision, which is not limited to a particular auto and does provide this employee liability coverage for that auto, what's your answer to the contention that just for that reason alone, we have to apply the uninsured motorist coverage statute to say, well, if you're going to give that coverage, then you've got to give this coverage too? Certainly, Your Honor. So my brother is correct when he said that there was no case law in Rhode Island upholding his position. However, there is case law upholding my position on this matter. The Supreme Court of Rhode Island has held on several occasions that the uninsured motorist statute governs only the extent of coverage that must be provided to the policyholder. It doesn't just dictate who needs to be afforded coverage under certain parts of the policy. But it does dictate it once you've decided to give them the kind of coverage that triggers the statute, right? Respectfully, that's limited to if the court has interpreted the language of the statute just as strictly as it interprets the policy itself. And so the court has repeatedly upheld policy language, which affords liability coverage to someone, not the named insured, but someone who is afforded coverage because they're a family member of a named insured, while also excluding them from uninsured motorist coverage. The court has made this decision. What's that case? First was Mello v. Aetna. In that case, the plaintiff was on his mother's policy because he was a family member of the named insured. And the court there held that, quote, neither the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. And 10 years later... And just so I understand, in that case, the family member had been given what kind of coverage under the policy? The family member was entitled to liability coverage under the policy. And they concluded that giving liability only didn't trigger the statute? Correct, Your Honor. They found no violation of the statute in that matter because the person that was being offered under one part of the policy was not the named insured. He was just insured for that purposes of liability coverage. He was the named insured's son. And they held, they also held in... Well, I'm trying to understand exactly what the ground of distinction. Is it that the named insured only got liability coverage, or is it that it wasn't the named insured? It wasn't the named insured. So here it is the named insured. No. The person at issue in that case was not the named insured. The person at issue in this case, the plaintiff, is not the named insured. Well, is that true for purposes of the endorsement provision that gives them liability coverage? You'd say yes because the named insured is the one who has the policy, is the idea? The endorsement that gives them coverage gives them coverage for liability purposes only. It makes them uninsured for liability purposes, even if they might not otherwise be. In both in Mello v. Edna and then ten years later in Delegato v. Liberty Mutual, the court makes the distinction. In both of those cases, the person bringing the claim was not the named insured, but because of the policy language, specifically language that allows you to be considered a named insured as long as you're a family member residing with the named insured, then they were entitled to liability coverage, but they were still allowed to be excluded from uninsured motorist coverage. First, in one circumstance, because the car was not a covered auto, and in another circumstance, because it was her own vehicle that was not listed on the policy, it was listed on a separate policy. And the court went on in Delegato to uphold where it was the husband's policy, so again, the wife was covered for liability purposes, but the statute does not mandate that uninsured motorist coverage be extended to vehicles that are not covered under the policy. The court has repeatedly reiterated that uninsured motorist coverage is attached to a vehicle. But I'm just still not sure I'm tracking everything. This liability provision does apply to this vehicle. The employees as insured endorsement only applies to liability coverage. Correct. So anyone who would be entitled to liability coverage, but it doesn't mean that you're automatically insured for uninsured motorist coverage when you're not in a covered auto. And the endorsement doesn't make you a named insured, it makes you an insured. Just the same circumstances as was the claimant in Mello in Delegato, the court has made clear that the statute of the intent of the statute is, quote, for protection to be given to the named insured against economic loss resulting from injuries sustained by the Just help me out. How do I know who the named insured is and who is just an insured? The named insured is very clearly defined on the policy. It's completely unambiguous. It's U equals the named insured. The named insured is on the top of several different endorsements and attachments as named insured equals state of the art. What text in the uninsured motorist statute tells me that this distinction between named insured and uninsured matters? Well, Your Honor, the policy insured against loss in that statute is directed towards policies that provide coverage for the insured motor vehicle. So I think we have to turn the attention back to the vehicle itself. There is no policy providing primary coverage for the insured vehicle if there is no insured vehicle. There is no covered auto. The plaintiff's auto is not. In other words, is it the fact that the statute is for loss as opposed to liability? I'm sorry. I'm not sure I understand your question, Your Honor. She has liability coverage under this endorsement. Correct. I believe that's undisputed. But that's all she had. Correct. Does the uninsured motorist policy refer to what kind of policies is that statute talking about? The policies under the uninsured motorist coverage are for a policy insuring against loss, which is a defined term meaning a policy providing primary coverage for the insured motor vehicle. Under the statute here, this is not the insured motor vehicle. Only autos owned by the State of Rhode Island are insured. I'm trying to figure out what's the text that's telling me, since the endorsement provision refers to the liability coverage applying to this vehicle, what's the text in that statute that tells me, yes, even though you have liability coverage for this vehicle, what we care about is your coverage for the other vehicle? With all due respect to our friends in the legislature, I think the statute is rather unclear. And for that reason, we have to look at the Rhode Island Supreme Court interpretation of the statute. That's where you say Edmund v. Malone, et cetera? Exactly. Their interpretation has been that it applies to the named insured, and they have repeatedly upheld exclusions of just an insured under the liability part from the uninsured motorist part. What are your thoughts about certification? I think the policy language is clear. This can be answered as a contract interpretation question, and I don't think certification is necessary. Let me ask you another question. I note that the Martinelli case was decided in 1996, the Madera's three opinions, 2002, and then 2003-2003. And since then, Travelers, which I understand is one of the largest and oldest insurance companies in the nation, has had Symbol 2. And I'm sure other insurance companies also have Equalist Symbol 2. So my question is, obviously this is not legal present, but isn't that custom and use perhaps demonstrate how insurance companies throughout these last 20 years have interpreted those decisions? I think actually just the opposite, Your Honor. If you look at the other choices for coverage, I think it's telling the choice that the state of Rhode Island did not select for the purposes of uninsured motorist coverage. They didn't select choice number nine, which would be non-owned autos that aren't used for your business. If an employee was meant to be considered uninsured automatically if she was in the scope of her business, having such a choice would be superfluous. There would be no need to distinguish between vehicles in the scope of your business. It would be the exact same definition as just any auto if it just has to be uninsured. So Rhode Island could, I just said under Symbol 9, fill that box and then the plaintiff would have been included. Correct. I don't think that's in dispute, but Rhode Island did not select. I guess it's a policy decision that the state has. For example, it could be we don't want to risk people working, but then we have to determine if they're actually working or not working. Let's not cover those cars. That's Rhode Island's decision, correct? Correct, Your Honor. I think it was meant to make it clear it's either our vehicle or it's not our vehicle, and Rhode Island didn't want to open itself up to liability exposure by not having various vehicles covered under liability when it could potentially have some sort of vicarious liability for the driver. But that doesn't mean it wanted to open itself up to claims for every employer. Doing something all the time could make a claim against their policy instead of their own auto policy, which would have their claim. And if there were, let's assume an allegation by Ms. Thornton, for example, saying, well, the state, I didn't see the policy, but the state was encouraging me to drive my own vehicle XYZ. From Travers' perspective, that's not an issue. It would be an issue between she would have to sue perhaps the state or something else, not Travers. Correct. She could bring a claim under her own auto insurer, which every policy that's going to require you to have or that's going to allow you to have coverage because of some tangential relationship like that is going to require you to have your own policy as well. And Ms. Travers, in this case, did have her own policy with uninsured motorist coverage, and I respectfully submit that that's the policy intended to cover her in such a situation as uninsured motorist coverage is not meant to be the equivalent of liability coverage. Thank you. Thank you, counsel. At this time, counsel for the appellant, please reintroduce yourself on the record to begin. You have a two-minute rebuttal. Thank you again. Jim DeAmber on behalf of the appellant. To answer Judge Barron's question about the scope of the statute, it clearly says no policy insuring loss resulting from liability. That's what the employee as an insured endorsement did, it created liability coverage. And what do you make of the precedents that your opponent was citing to us saying that it's been construed? Those are totally different cases. They have not cited one case. What's different about them? Those cases were cases like, for example, in this case, where there's no doubt that the vehicle was covered for liability coverage. Our argument is they're required because the vehicle's covered under the statute to provide UM. It's not an exclusion. In the case of the son, it wasn't clear that the car was covered for liability? It was, but the exclusions were different than it wasn't this type of a case. It was, for example, De La Grada and Mayo. Those were exclusions dealt with, owned but not insured, if you were in another vehicle at the time. There's many other exclusions. But in this case, there's not one case from the Rhode Island Supreme Court that says if there's liability coverage, you can exclude UM because there's no question she was an occupant of the vehicle. In those other cases, they weren't occupants. And what do you make of the named insured versus uninsured distinction? Well, that's the whole basis of Martinelli, the named insured, because you can't have a corporation suffer bodily injury. So a named insured has higher rights under a policy than a regular insured under who isn't insured. And that's the whole basis of Martinelli, why they're extending the coverage, UM coverage to non-owned autos if they're in the scope of their employment, because they should be considered the named insured because employees, officers, who else is going to get that benefit? Lastly, if I could judge, when counsel indicated in Medeiros 1 and 2, the Supreme Court did not address the Martinelli exception, if I can read very quickly from Medeiros 2, that's the Supreme Court case, 822A2-175. It says, in Medeiros 1, we affirm judgment because absent any evidence, the defendants were acting in the scope of their employment, and the corporations, when the accident occurred, summary judgment was proper. That's the Martinelli exception. They addressed it, they applied it. In that case, Medeiros 1 and 2, there was no evidence of scope of employment, whereas in Medeiros 3, they were able to show before a judge and dagger their scope of employment. Thank you for the consideration. Thank you, counsel. That concludes argument in this case.